**VIRGIN ISLANDS COMMUNITY HOUSING LIMITED PARTNERSHIP,
Plaintiff
v.
LORELIE RIVERA, Defendant**

Civil No. ST-07-CV-655

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 24, 2008

J. DARYL DODSON, ESQ., Moore, Dodson Russell, P.C., St. Thomas, USVI, *For the Plaintiff.*

KATHLEEN NAVIN, ESQ., Legal Services of the Virgin Islands, St. Thomas, USVI, *For the Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(December 24, 2008)

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction. Plaintiff Virgin Islands Community Housing Limited Partnership was represented by J. Daryl Dodson, Esq. of Moore, Dodson & Russell, P.C., and Defendant Lorelie Rivera was represented by Kathleen Navin, Esq. of the Legal Services of the Virgin Islands. Defendant argues that the Court lacks subject matter jurisdiction of this Forcible Entry and Detainer ("FED") proceeding and that it should be dismissed. The Court agrees with the Defendant's position and will dismiss this action.

## STATEMENT OF FACTS

On or about December 22, 2006, Defendant Lorelie Rivera ("Rivera") signed a lease for a two-bedroom apartment at the Patriot Manor residential apartment complex, owned by Plaintiff Virgin Islands Community Housing Limited Partnership ("VICH"). The lease was for a term of approximately one year, with a provision for automatic termination on November 30, 2007. The lease states, "[t]he Resident understands that this property is subject to the **Low Income Housing Tax Credit (LIHTC) Regulation** (Def.'s Ex. 1, p. 6)." The LIHTC provides federal tax credits for those who rent property to low-income tenants. Rivera also receives rental payment assistance under the Section 8 Project-Based Assistance Housing Choice Voucher ("Section 8") Program run by the U.S. Department of Housing and Urban Development ("HUD").[1]

On December 27, 2006, VICH signed a Housing Assistance Payment contract ("HAP contract") for existing housing with the Virgin Islands

---

[1] The LIHTC under 26 U.S.C. § 42, and the Section 8 Program under, 42 U.S.C., § 1437-1437z-8, work together as a cohesive federal scheme to support housing for low-income families. *Carter v. Maryland Management Co.*, 377 Md. 596, 835 A.2d 158, 162 (2003).

Housing Authority ("VIHA") for forty-two (42) rental units located in the Patriot Manor apartment complex. The HAP contract is part of the Section 8 Program run by HUD. Under the HAP contract between VIHA and VICH, the effective date for all units was December 27, 2006. The HAP contract states that "the [Public Housing Authority] shall make housing assistance payments to the owner for the months during which a contract unit is leased to and occupied by an eligible family." On March 22, 2007, VIHA found Rivera eligible to occupy one of the project-based units in Patriot Manor with her young daughter. Rivera remained in the same apartment, but she then started receiving rental payment assistance through VIHA. On October 3, 2007, Rivera received a notice to quit her apartment by December 1, 2007, due to the expiration of her lease the following month on November 30, 2007 (Pl.'s Ex. 2). From November 30, 2007 onward, the rental payments that Patriot Manor received have been accruing in an escrow account. On December 12, 2007, Rivera received another letter to quit, which stated that her lease was not being renewed because of alleged misconduct (Pl.'s Ex. 12). On December 28, 2007, VICH commenced a summary action for forcible entry and detainer, seeking restitution of Rivera's apartment. Defendant moved to dismiss this action for lack of subject matter jurisdiction on April 18, 2008. On May 27 and 30, 2008, the Court conducted a trial in this matter, having reserved decision on the Motion to Dismiss. This Court has found that it lacks subject matter jurisdiction over this proceeding as an FED action and will therefore dismiss the action.

## DISCUSSION

### I. Jurisdiction of the Superior Court in FED Proceedings

 This forcible entry and detainer action is governed by the legal principles enunciated in *Estate of Thomas Mall, Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258 (3d Cir. 1991):

> FED complaints are summary actions to determine rights of peaceable possession of real property. . . . But speedy adjudication of the issue of peaceable possession comes at a price. The price is that the scope of an FED proceeding is very limited. Unless the statute is to the contrary, the jurisdiction of the Court in FED cases is confined to determining the issue of peaceable possession and does not extend to (a) an adjudication of title or (b) the right to possession; nor can the justice ad-

judicate a right of possession that depends on an equitable interest in the premises [] or inquire into equitable rights and give relief to which the party might be entitled in equity.

. . .

As soon as a defendant in possession in an FED action raises a colorable defense requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie.

*Estate of Thomas Mall*, 923 F.2d at 264 (internal citations omitted) (citing *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 190 (3d Cir. 1990); *Inter Car Corp. v. Discount Car Rental*, 21 V.I. 157, 159 (Terr. Ct. 1984); and *Iron Mountain & H.R. Co. v. Johnson*, 119 U.S. 608, 612, 7 S. Ct. 339, 30 L. Ed. 504 (1887)). As the *Estate of Thomas Mall* Court noted, an FED action is not proper when "there is a lease between the parties, the meaning of which is in dispute." *Id.* at 265.

█ The hearing in this matter was conducted consistent with the principles enunciated in *Virgin Islands Port Authority v. Joseph*, 49 V.I. 424, 431 (V.I. 2008) ("The trial court should hear evidence until it is able to determine, based on the evidence, whether [defendant] has raised a facially bona fide and good faith defense to [plaintiffs] claim for possession.").

Applying the legal principles expressed in *Estate of Thomas Mall* to the facts of this case, we are led to the conclusion that this Court does not have jurisdiction of this action as an FED case, since to resolve the issues in the case, the Court would have to construe the lease between he parties. There is no dispute that Rivera had a lease with Patriot Manor Apartment Complex. There is also no dispute that Rivera was approved as a participant under the Section 8 Program on March 22, 2007. VICH's own documents also state that they received tax credits under the LIHTC regulations. The ultimate issue that would have to be determined in this case is whether or not the lease originally signed by Rivera controls or whether the tenancy addendum, other program requirements, and federal regulations override contradictory provisions in the initial ease. Thus, to resolve the questions in this FED proceeding, this Court would have to construe the agreement between VICH and Rivera, in violation of the principles set forth in *Estate of Thomas Mall*.

Recent cases from both the Appellate Division of the District Court of the Virgin Islands and the Supreme Court of the Virgin Islands have

183

reaffirmed these principles enunciated in *Estate of Thomas Mall*. As the Supreme Court of the Virgin Islands recently stated, "[t]he trial court should hear evidence until it is able to determine, based on the evidence, whether [defendant] has raised a facially bona fide and good faith defense to [plaintiff's] claim for possession." *Virgin Islands Port Authority v. Joseph*, 49 V.I. 424, 431 (V.I. 2008); *see also Inter Car*, 21 V.I. at 159 (court is duty-bound to proceed with the evidence until it appears that the question involved is in fact one of title or a complicated case of the right to possession).

■ Assuming that the Court has conducted the proceedings in such a manner, "[w]here a tenant is retaining possession by force, relief is available in a summary FED proceeding only if there 'is an undisputed oral or written lease agreement, and rent is due and owing thereon; . . .'" *Four Winds Plaza Corp. v. White*, No. 2005-203, 2008 U.S. Dist. LEXIS 61484, *8 (D.V.I. filed August 5, 2008) (internal quotations and citations omitted). If the proceeding before the Court is in fact an FED proceeding, the Court's jurisdiction is limited to adjudicating issues that do "not raise a colorable claim of right under a lease agreement, or issues of damages, or for collection of unpaid rents." *White*, 2008 U.S. Dist. LEXIS 61484 at *13.

With these principles in mind, we turn to the facts in this case.

## II. Section 8 Program Tenancy Addendum

■ Although a new lease was not signed in March 2007 when Rivera was approved as part of the Section 8 program, Rivera argues that the tenancy addendum that is part of the Section 8 Tenant-Based Assistance Housing Choice Voucher Program then became part of her lease.[2] This conclusion is supported by testimony and other documents, and by federal regulations promulgated by HUD. 24 CFR § 983.256(d)(2) (2008) ("All provisions in the HUD-required tenancy addendum must be included in the lease. **The terms of the tenancy addendum shall prevail over other provisions of the lease.**") (emphasis added). Thus, Rivera has provided

---

[2] Under section 17 of the Tenancy Addendum, a "lease" is defined as: "[t]he written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD." Although the Tenancy Addendum offered in evidence says "Tenant-Based Assistance" it is also the same Tenancy Addendum used for the Project-Based Program (Tr. Test. of Akala Anthony, pp. 24-8, May 30, 2005).

evidence through federal regulations and direct testimony that the terms of the tenancy addendum trump any contrary provisions of the lease.

VICH argues that a provision in the original lease, which provides for automatic termination without notice, at the end of the one-year lease period, controls in this case. However, Rivera has made a persuasive argument that the tenancy addendum, which allegedly became a part of the lease and which was allegedly incorporated into the lease, does in fact contradict and supersede the original lease. The tenancy addendum provides:

8. **Termination of Tenancy by Owner**

 a. **Requirements**. The owner may only terminate the tenancy in accordance with the lease and HUD requirements.

 b. **Grounds**. During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:

 (1) Serious or repeated violation of the lease;

 . . .

 (4) Other good cause (as provided in paragraph d).

 . . .

 g. **Owner notice of grounds**

 (1) At or before the beginning of a court action to evict the tenant, the owner must give the tenant a notice that specifies the grounds for termination of the tenancy. The notice may be included in or combined with any owner eviction notice.

 (2) The owner must give the PHA a copy of any owner eviction notice at the same time the owner notifies the tenant.

 . . .

(Def.'s Ex. C, p. 2-3.) Thus, in order to resolve the issues in this case, this Court must construe the provisions of the lease *and* tenancy addendum to make a determination as to whether the lease expired by its own terms or if the tenancy addendum controlled, which provides for termination only upon a showing of good cause.

The bulk of VICH's case at trial and its subsequent pleadings focus on whether or not they in fact did have good cause to evict Rivera from her apartment. VICH presented evidence of numerous alleged violations, but

185

they failed to present evidence that proper notice of the violations and an opportunity to cure were provided to Rivera in accordance with HUD regulations and the lease contract. In any event, finding that the good cause requirement for eviction had been met, would require this Court to construe the meaning of the agreement between the parties, which is not proper in FED proceedings.

### III. LIHTC Regulations

■ VICH is the recipient of federal tax credits for low-income housing at Patriot Manor and as such, is bound to abide by the rules and regulations pertaining to those tax credits. *Carter v. Maryland Management Co.*, 377 Md. 596, 835 A.2d 158, 164 (Md. 2003) ("In order to qualify for the tax credit under § 42, a landlord must comply with statutory requirements and requirements imposed by authorized regulations of the Secretary of Housing and Urban Development during both the initial compliance period and the extended use period.").[3] In its pleadings, VICH argues that the so-called "endless lease" provisions were removed from the regulations through Congressional amendments made in 1989. Although VICH concedes that good cause for an eviction should be given during the later "extended use" period identified in the code, it argues that these same protections do not apply to the initial "compliance period," under which Patriot Manor falls. This argument is directly contradicted by Congressional commentary on the amendments.

> The bill denies the credit to otherwise qualified property unless the owner of that building is subject to an enforceable agreement with the housing credit agency which prohibits (1) eviction of low-income tenants for other than good cause and (2) any increases in the gross rent for low-income units in excess of allowable rents under the rules applicable during the 15-year *compliance credit period.*

H.R. Rep. No. 101-247, pt. 2 at 1195 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2665 (emphasis added).

---

[3] VICH argues that in the FED proceeding, Rivera must prove the exact credits VICH receives under the Low Income Housing Tax Credit (LIHTC). In a full civil proceeding, however, such information would have been provided to Rivera through discovery, and this argument would not have been available to VICH.

■ VICH also attempts to summarily dispense with the holding of the Court in *Carter* by labeling it "erroneous." However, *Carter* does not state that tenants are entitled to "endless leases," but that they are to be evicted only upon a showing of good cause. *See Carter*, 835 A.2d at 168-9 (tenants are not entitled to an endless lease if good cause exists to evict them; ". . . whatever term may be stated in the lease, a voucher program tenant may not be evicted by a landlord who has qualified for a § 42 tax credit and is continuing to receive rent subsidies, either during the term of the lease or at the expiration of that term, except for conduct or circumstances that qualify under the Federal law as good cause").[4] Rivera has presented a colorable claim that under the LIHTC regulations, she is entitled to protection and should not be evicted at the expiration of her lease, absent good cause. *See In re Turner*, 326 B.R. 328, 332 (Bkrtcy. W.D. Pa. 2005) ("Unfortunately, little case law is available on the narrow issue of 'expiration' as opposed to 'termination' of a lease entered into with a landlord who provides housing pursuant to the Low Income Housing Tax Credit program ('LIHTC') offered by 26 I.R.C. § 42."). Because Rivera's claim to a right to possession of the premises is a "colorable" one, this Court lacks jurisdiction under the FED statute, and this action must be dismissed.

## CONCLUSION

This case presents numerous issues with respect to Defendant's claims and defenses, which should be dealt with in a regular civil action. For that reason, the Court finds that it does not have subject matter jurisdiction and will dismiss this action. A separate Order will follow.

---

[4] Even if VICH had good cause to evict Rivera from her apartment, it was not clear from the evidence presented that VICH followed the provisions in the lease and/or other regulations establishing the proper procedure to terminate Rivera's tenancy. In any event, as noted above, this type of evidence is not properly before the Court in an FED proceeding, since it would involve the Court in construing the terms of the lease between the parties. *White*, 2008 U.S. Dist. LEXIS 61484, at *14.